# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

EMMANUEL OHAI,             :
                                   :

        Plaintiff,         :      **CIVIL ACTION FILE NO.**
                                   :      **1:15-cv-03305-SCJ-AJB**

     **v.**                      :

                                   :

**DAL GLOBAL SERVICES, LLC,**    :
**DARRELL COOPER,**           :
**SEGUN K. ABORISADE,**       :
**and DELTA AIRLINES INC.,**    :

                                   :

       **Defendants.**        :

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND NON-FINAL REPORT AND RECOMMENDATION

This matter is presently before the Court on the motions to dismiss filed by Defendants DAL Global Services, LLC ("DGS"), [Doc. 6], Segun K. Aborisade ("Aborisade"), [Doc. 11], and Delta AirLines, Inc. ("Delta") and Darrell Cooper ("Cooper"), [Doc. 23]; and Plaintiff's motion for leave to file a second amended complaint, [Doc. 32]. For the reasons set forth below, the undersigned **RECOMMENDS** that Delta and Cooper's motion be **GRANTED**, DGS and Aborisade's motions to dismiss be **GRANTED IN PART** and **DENIED IN PART**. Further, the Court **GRANTS** Plaintiff limited leave to file a second amended complaint.

# I. Procedural History

Plaintiff filed this *pro se* civil action on September 21, 2015. [Doc. 1].[1] On November 30, 2015, he filed his First Amended Complaint, asserting employment discrimination under Title VII against all Defendants (Count One), retaliation under Title VII against all Defendants (Count Two); breach of contract against DGS (Count Three); fraud against DGS (Count Four); and violation of Georgia Deceptive Trade Practices Act against all Defendants (Count Five). [Doc. 5].

On December 10, 2015, DGS moved to dismiss the amended complaint, [Doc. 6], followed on December 29, 2015, by Aborisade's motion, [Doc. 11]. Plaintiff responded to Aborisade's motion on January 7, 2016.[2] [Doc. 17]. On January 13,

---

[1]  On November 20, 2015, DGS moved to dismiss the initial complaint. [Doc. 3]. Plaintiff responded on December 11, 2015. [Doc. 7]. On January 12, 2016, the District Judge denied DGS's motion as moot due to the filing of the amended complaint. [Doc. 19].

[2]  It is not completely clear that Plaintiff responded to DGS's motion to dismiss the amended complaint, since his response to Aborisade's motion sometimes references DGS's arguments. In any event, courts generally do not grant a motion to dismiss based on a *pro se* plaintiff's failure to respond to the motion. *Daniel v. United States*, 891 F. Supp. 600, 602 n.1 (N.D. Ga. 1995) (Hull, J.) (stating that a motion to dismiss for failure to state a claim cannot be granted on the basis that plaintiff fails to respond); *see also Johnson v. Am. Meter Co.*, 412 F. Supp. 2d 1260, 1262 n. 3 (N.D. Ga. 2004) (Carnes, J.) (addressing merits of motion to dismiss despite plaintiff's failure to timely respond to such motion); *Lane v. Wells Fargo Home Mortg.*, Civil Action No. 1:10-CV-2385-RWS, 2010 WL 5087855, *1 (N.D. Ga. Dec. 7, 2010)

AO 72A
(Rev.8/8
2)

2016, Aborisade filed a reply brief. [Doc. 21]. On February 1, 2016, Delta and Cooper jointly moved to dismiss the amended complaint, [Doc. 23], and Plaintiff responded on February 22, 2016, [Doc. 28].[3] Plaintiff filed a motion for leave to file a second amended complaint on April 8, 2016, [Doc. 32], to which Defendants responded on April 18, 2016, [Doc. 33], and Plaintiff replied on May 10, 2016, [Doc. 34].

With briefing completed, the Court now considers the pending motions. The Court first considers Defendants' motions to dismiss Plaintiff's federal claims asserted in the amended complaint. Then, the Court addresses whether Plaintiff should be allowed to file a second amended complaint, because if he is granted that opportunity and there are claims supporting federal-question jurisdiction remaining in the case, then the District Court cannot simply decline to consider Plaintiff's state-law claims under supplemental or pendent jurisdiction. Finally, since the Court concludes that Plaintiff

---

(Story, J.). Thus, the Court will address the merits of the motion. Because the arguments raised in Plaintiff's response to Aborisade's motion are nearly identical to the arguments raised in Plaintiff's response to DGS's motion to dismiss the initial complaint, the Court will refer to Doc. 17 as the response to the pending motions. [*See* Docs. 7, 17].

   [3]    Plaintiff also filed an emergency motion for temporary restraining order and motion for preliminary injunction on February 17, 2016 seeking to prevent termination of his employment and to continue use of his travel pass privileges. [Doc. 25]. The District Judge denied the emergency motion on March 10, 2016. [Doc. 31].

AO 72A
(Rev.8/8
2)

should be allowed to amend his complaint to raise a limited claim under the Fair Labor Standards Act (FLSA), the Court addresses Defendants' motions to dismiss Plaintiff's state-law claims.

## II. Allegations in Plaintiff's Amended Complaint

As it must when deciding a motion to dismiss, the Court accepts as true the well-pleaded facts set forth in the operative complaint, [Doc. 6], and construes those facts in the light most favorable to Plaintiff. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). The Court, however, is not required to accept Plaintiff's legal conclusions. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Applying the aforementioned standards, Plaintiff is a United States citizen, originally from Nigeria, and at the time of the amended complaint's filing, an employee of Defendant DGS. [Doc. 5 ¶ 1]. Cooper was DGS's General Manager of the Security

4

Services Division. [*Id.* ¶ 3]. Aborisade was an Account Manager with DGS. [*Id.* ¶ 4]. DGS is a wholly-owned subsidiary of Delta. [*Id.* ¶ 5].

Plaintiff's complaint contains a number of incidents that he contends are the result of discrimination, but overall he complains that DGS engaged in unlawful, discriminatory and retaliatory conduct by (1) failing to establish uniform classifications and policies consistent with Department of Labor regulations, such that it illegally classified employees for purposes of administering benefits; (2) discriminating in scheduling that allowed managers to prefer social acquaintances, friends, and family; (3) abusing the "ready serve program" so that staff that did not work enjoyed flight benefits while other employees were harassed to work undesirable shifts; (4) applying its benefits arbitrarily; and (5) discriminating based on the outcome of the whistleblower investigation into the ready reserve program. [*Id.* ¶ 10].

Plaintiff described three classes of employees at DGS: full time, part time, and ready reserve. [*Id.* ¶ 32]. Although Plaintiff has held a position in each class, during the relevant time period, Plaintiff was a ready-reserve employee who worked at the Suntrust Account of DGS. [*See id.* ¶¶ 29, 37, 38, 40, 51].

Plaintiff openly discussed with his co-workers and immediate supervisors the perceived unlawful activities of DGS Account Managers regarding the manner in which

AO 72A
(Rev.8/8
2)

they ran the ready reserve program.  [*Id*. ¶¶ 11, 14].  For example, Plaintiff alleges that it was widely known that Account Manager Alan T. Payne gave favorable job postings to employees who he helped get jobs and to employees with whom he had an interest in having a sexual relationship.  [*Id*. ¶ 12].  Another account manager, Scovadis Howard, helped several members of her church obtain jobs at DGS as a ready-reserve employee and ensured that those employees enjoyed Delta flight benefits to which they would not otherwise have been entitled, and employees that were not of her religious faith suffered religious discrimination.  [*Id*. ¶¶ 13, 35].

The amended complaint goes on to allege that a call was made to the whistleblower hotline, which led to an investigation of the ready reserve program run by Payne, Howard, and Aborisade; however, Plaintiff did not make this call.  [*Id*. ¶¶ 11, 15].  As a result of the investigation, Payne was separated from the company, Howard was reassigned, and Aborisade remained in his position as account manager, leading many to believe that Aborisade was the whistleblower.  [*Id*. ¶ 16].  Like Plaintiff, Aborisade is from Nigeria.  [*Id*. ¶¶ 4, 17, 19, 20].  Although many believed Aborisade was the whistleblower, since the investigation, Plaintiff has been the recipient of constant harassment and retaliation, such as not receiving his paycheck, management not responding to emails, and threats of dismissal.  [*Id*. ¶¶ 21-29].

AO 72A
(Rev.8/8
2)

In July 2011, a shift became available, however, Plaintiff did not have equal opportunity to bid for the open shift because Defendants failed to post the shift, in violation of the DGS policy that requires that such shift openings be posted so that every employee will have an opportunity to bid for them. [*Id*. ¶¶ 39, 40]. A female employee with less seniority or professional qualification than Plaintiff, Ms. Turner, was given the shift, in violation of DGS policy. [*Id*. ¶ 41]. On August 15, 2011, Plaintiff complained about this violation by sending an email to his immediate supervisor and team leader. [*Id*. ¶ 42]. On August 16, 2011, in response to his email, Plaintiff received a phone call from Howard, now a DGS Human Resources Representative, who was verbally abusive and rude and told him that "there was nothing I can do to correct the situation. If you cannot work the shifts you are scheduled to work then quit." [*Id*. ¶ 43]. More than four weeks later, DGS account managers finally posted the Suntrust Data Center Officer job. [*Id*. ¶ 45]. Plaintiff received the posting via email from Aborisade on September 16, 2011, which the email also included a message that stated, "Please be advised that this position will require you or anyone interested to work every weekend unless you request for day off and it will be subject to an approval based on operational needs." [*Id*. ¶ 46]. However, no

AO 72A
(Rev.8/8
2)

other employee "that was similarly situated" or received this posting "was subjected to the unsolicited harassment and message." [*Id*. ¶ 47].

Plaintiff eventually obtained the position of Suntrust Data Center Officer. [*Id*. ¶ 48]. Starting in October 2011, Plaintiff was subjected to far more intense scrutiny "than his similarly situated co-workers." [*Id*. ¶ 50]. Plaintiff alleged that he continued to work at DGS only with the hope that someday he may be able to retire and enjoy the post-retirement travel pass. [*Id*. ¶ 52].

In December 2013, Cooper sent an email to Plaintiff and other employees announcing a change to the DGS employee pass travel program. [*Id*. ¶ 55; Doc. 1 at 30-32]. Plaintiff alleges that in the memo, Cooper intentionally made false statements including that "[g]overnment regulations allow only employees working in airline or aviation related positions eligibility for free travel privileges." [Doc. 5 ¶ 56; Doc. 1 at 31]. Although Cooper held a couple of town hall meetings with employees, he was unable to provide proof of the government's involvement with the DGS policy change. [Doc. 5 ¶ 60]. This allowed DGS to arbitrarily offer temporary "rover" positions– those who worked in both airline/aviation and non-airline/aviation sites– to employees who would be otherwise ineligible for the post-retirement travel pass. [*Id*. ¶¶ 57-59]. Thus, a female employee who worked with Plaintiff at Suntrust and was

8

weeks away from retirement and not eligible for the post-retirement travel pass unless she was approved for a transfer to an airline or aviation job site, asked Cooper at the town hall meeting if she could be given special consideration, to which Cooper responded "see us later; perhaps there is something we can do to help." [*Id*. ¶ 61]. Since the policy took effect on January 1, 2014, Plaintiff has paid a higher price than other DGS employees who are illegally classified as employees in aviation- or airline-related assignment for the same flight services. [*Id*. ¶¶ 62-65].

Plaintiff then raised concerns that the new policy was illegal and discriminatory and Minnette Pass removed Plaintiff's email address from the email list, denying Plaintiff administrative support and excluding him from getting important job posting information. [*Id*. ¶ 66]. Johnnie P., "a similarly situated" employee, is still on the mailing list and was transferred to an airline or aviation job site as a result of applying to a job opening that was not sent to Plaintiff. [*Id*. ¶ 67].

On one occasion, Plaintiff showed up to work late and the following Monday, Aborisade responded by setting up a redundant sign-in procedure. [*Id*. ¶ 69]. Prior to this event, employees at Suntrust Plaza only had to call a phone number to announce their arrival at work. [*Id*.]. Now, most employees do not call that number anymore and only Plaintiff and one other employee still call the number to report they are on duty.

AO 72A (Rev.8/8 2)

[*Id.*].  No other employees that have been late have had an issue to the extent that a new sign-in procedure was introduced.  [*Id.*].

On February 10, 2014, Plaintiff wrote his immediate supervisor to complain that he did not receive an award or recognition for his 10 years of service, as stipulated by company policy, which he met on March 23, 2013.  [*Id.* ¶ 71].  A few weeks later, Plaintiff found a letter of commendation on black and white photocopied letterhead; however, other similarly situated employees received their commendations on a colored DGS letterhead at an award ceremony, including Plaintiff's colleague M. Love. [*Id.* ¶¶ 72-73].

On November 11, 2014, Plaintiff emailed Aborisade to notify him that Plaintiff's father had passed away and requested time off for the weekend of December 13 and 14 to attend the funeral.  [*Id.* ¶ 74].  As part of DGS's bereavement policy, "employees who have to travel by air using the employee travel pass are usually approved for S1 boarding priority which gives them a good chance of getting a seat on the flight as standby passengers." [*Id.* ¶ 75].  Pursuant to this policy, Plaintiff additionally requested that he be approved for S1 boarding priority for his travel to Nigeria; however, Plaintiff's request was denied because the "the funeral is not recent" and "it has to be for an immediate death and funeral."  [*Id.* ¶ 77].

10

AO 72A
(Rev.8/8
2)

In November 2014, Plaintiff opened a new checking account that had a $12 monthly maintenance fee if not setup with direct deposit. [*Id*. ¶ 84]. On December 2, 2014, Plaintiff submitted a direct deposit request form to Minnette Pass and received a response from Aborisade informing him that it would take two weeks to establish the direct deposit. [*Id*. ¶¶ 85-86]. On January 9, 2015, Plaintiff wrote Aborisade and informed him that his direct deposit has not yet been set up. [*Id*. ¶ 87]. Having not received a response, Plaintiff forwarded the January 9 email on January 12 to Aborisade. [*Id*. ¶ 88]. Aborisade did not respond until January 27, 2015, in which he copied Plaintiff on an email to Pass inquiring as to the status of the direct deposit. [*Id*. ¶ 89]. Pass responded that she did not know what happened and requested that Plaintiff complete another form and, the next day, Plaintiff sent Pass the same form that he completed on December 2. [*Id*. ¶¶ 90, 91]. As of the date of the amended complaint, Plaintiff had not been set up with direct deposit. [*Id*. ¶ 92]. As Plaintiff is paid weekly, he must figure out where his check has been sent to every week. [*Id*. ¶ 100].

Plaintiff did not receive a pay check for the weekend of May 16-17, 2015, during which he worked 16 hours. He emailed Aborisade, the team leader and his supervisor. [*Id*. ¶ 101]. On May 30, 2015, Plaintiff received a paycheck which should have

11

included 16 hours for when he worked May 23-24, 2015 in addition to the 16 hours that was missing from May 16-17, for a total of 32 hours; however, the check only included 24 hours of pay, not 32. [*Id.* ¶ 103]. Plaintiff emailed his supervisor and the team leader informing them that the check was short 8 hours. [*Id.* ¶ 104]. On June 1, Plaintiff received an email indicating that he did not receive a check because he failed to sign in on the sign-in sheets and the 16 hours would be paid on June 5, 2015. [*Id.* ¶ 105]. In a subsequent email, it was indicated that "in researching this issue, it turns out that Officer Ohai was actually overpaid by 8.0 hours for the week ending 05/24/2015. Therefore, DGS currently owes Officer Ohai 8.0 hours. That time will be paid to him in the check for pay date 06/05/2015, which should resolve his payroll complaints in full." [*Id.* ¶ 107]. Plaintiff submits that the statement that he was overpaid by 8 hours is false as he was owed 16 hours for May 16-17. [*Id.* ¶¶ 108-14].

Plaintiff also did not receive a paycheck for the 16 hours he worked from June 6-7, 2015 and on June 13, he sent an email to Aborisade inquiring about the missing check. [*Id.* ¶ 115]. In response, Aborisade wrote "Did you have live check or direct deposit? I hope you signed the time sheets. I will have Arnold Perkins review the payroll on Mondsy [sic] morning to find out what went wrong." [*Id.* ¶ 116]. Around the same time period, a DGS female employee, Zainab C., also assigned to the Suntrust

AO 72A
(Rev.8/8
2)

Account, failed to sign her time sheet, reported to the supervisor that she was owed a paycheck for 16 hours worked that weekend, and received a live check the same day. [*Id*. ¶ 117]. When Plaintiff called the supervisor on June 14, 2015 to inquire about the hours being submitted, the supervisor responded "Ohai, you know there is something going on between you and those folks in the office." [*Id*. ¶ 118]. As of the date of the Amended Complaint, Plaintiff was still owed salary for 16 hours worked on June 6-7, 2015. [*Id*. ¶ 119].

On June 17, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [*Id*. ¶¶ 8, 24; Doc. 1 at 25]. On June 29, 2015, the EEOC issued Plaintiff a right-to-sue letter. [Doc. 1 at 25-26].

### III.    *DGS and Aborisade's Motions to Dismiss, [Docs. 6, 11]–Federal Claims*

DGS argues that Plaintiff's Title VII discrimination and retaliation claims (Counts I and II) must be dismissed because most of the alleged discrimination is time-barred, and what is not time-barred cannot be considered adverse employment actions. It also contends that Plaintiff has failed to allege that the adverse actions were based on a protected characteristic, and Plaintiff has not alleged that he engaged in a statutorily protected conduct as required for a claim for retaliation and are at most generalized workplace complaints. [Doc. 6-1 at 7-16]. DGS further argues that because Plaintiff's

13

Title VII claims are due to be dismissed, Plaintiff's state law claims (Counts III-V) are also due to be dismissed for lack of subject matter jurisdiction, and, in any event, each claim fails to state a claim for relief. [*Id.* at 17-19]. Aborisade joins in DGS's arguments and additionally argues that Plaintiff's Title VII claim against him must be dismissed because Title VII does not recognize individual liability. [Doc. 11-1 at 2]. As Plaintiff's responses to both DGS and Aborisade's motions are nearly identical, [*see* n.1, *supra*; Docs. 7, 17], the Court will discuss both motions together.

### A.    *Legal Standard*

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court "must accept the facts pleaded as true and construe them in a light most favorable to [the] plaintiff[]." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). At the same time, however, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). While a complaint

14

need not contain detailed factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). The court also may dismiss a complaint pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A "document filed *pro se* is 'to be liberally construed,' . . . , and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Mederos v. United*

AO 72A
(Rev.8/8
2)

*States*, 218 F.3d 1252, 1254 (11th Cir. 2000) (discussing that *pro se* filings are entitled to liberal construction). "Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. . . . Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010).

## B.    Discussion

DGS first argues that the vast majority of Plaintiff's discrimination claims were not brought within the applicable 180-day statute of limitations. [Doc. 6-1 at 7]. Defendants note that most of the alleged events occurred between 2011 and 2014; however, Plaintiff did not file an EEOC charge until June 17, 2015. [*Id.*]. Thus, DGS argues that any alleged adverse action that occurred prior to December 19, 2014 is time-barred. DGS contends that, as a result, the only timely claims are the allegations surrounding the failure to set up direct deposit and the failure to pay him for 16 hours. [*Id.* at 8].

AO 72A
(Rev.8/8
2)

As to those claims, DGS argues first that Plaintiff does not allege that these actions were based on any protected characteristic under Title VII, but is instead "based on plaintiff's objection to . . . unlawful practices." [*Id*. at 8-9 (quoting [Doc. 23 ¶ 103])]. It argues that these claims are not for discrimination under Title VII but at most claims for unlawful retaliation, which also fail. [*Id*. at 9]. DGS further argues that even if Plaintiff asserted a protected characteristic, the amended complaint fails to even suggest that Plaintiff's protected characteristic was related to the events about which he complains; rather, his complaints concern only various disagreements or incidents during his employment. [*Id*.]. DGS also argues that the timely-alleged conduct does not rise to the level of adverse employment actions under Title VII as the conduct alleged is nothing more than trivial employment actions that are not actionable under Title VII. [*Id*. at 10-11].

With regard to Plaintiff's Title VII retaliation claim, DGS contends that Plaintiff has not alleged any facts to suggest that he complained about unlawful discrimination prohibited by Title VII or that Plaintiff had a good faith belief that DGS engaged in unlawful discrimination. [*Id*. at 12-15]. DGS further argues that Plaintiff has not stated any facts that suggest that the alleged actions surrounding the direct deposit and 16-hour pay events were connected to his complaints. [*Id*. at 15].

17

Aborisade additionally argues that Plaintiff's Title VII claims against him should be dismissed because there is no individual liability under Title VII against supervisors and co-workers. [Doc. 11-1 at 2].

In response to DGS's argument that most of the alleged acts of discrimination are time-barred, Plaintiff appears to argue that equitable tolling should apply, particularly to the allegation that Plaintiff was not given priority boarding for his father's funeral in Nigeria, because (1) the loss of a parent is an extraordinary circumstance, and (2) Defendants misled Plaintiff into missing the 180-day deadline. [Doc. 17 at 3-6]. Plaintiff specifically argues to his second point that he emailed Aborisade on June 13, 2015 to report that he was not paid sixteen hours for when he worked the weekend of June 6, 2015 and Defendants intentionally failed to respond to him before the 180-day deadline so that Plaintiff would miss the deadline to file a discrimination charge regarding the failure to give him priority boarding for his father's funeral. [*Id.* at 5-6]. Plaintiff appears to argue that the denial of priority boarding for his father's funeral was due to his national origin as he is Nigerian. [*See id.* at 4-5].

AO 72A
(Rev.8/8
2)

Plaintiff does not provide any additional arguments in response to DGS's motion to dismiss the Title VII claims.[4]  [*See id.*, *passim*].

In reply, Aborisade argues that Plaintiff has not identified a legal basis for this Court to apply equitable tolling under the applicable Eleventh Circuit standards and the loss of a parent is insufficient to toll the limitations period.  [Doc. 21 at 2].  Aborisade further argues that the Title VII claims should be dismissed because Plaintiff failed to address or did not dispute DGS's other arguments.  [*Id*. at 3].

---

[4]     Failure to respond to an argument about a claim's viability generally constitutes abandonment of that claim.  *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."); *but see Boazman v. Econs. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976) (holding that plaintiff's failure to respond to motion to dismiss, even after express order to do so, was insufficient grounds for dismissal).

After considering these authorities and with due regard for Plaintiff's *pro se* status, the Court deems it proper to consider the motions on their merits notwithstanding Plaintiff's failure to respond to certain arguments.  In so doing, however, the Court cautions that it is under no duty to "distill every potential argument that could be made based upon the materials before it."  *Resolution Trust Corp.*, 43 F.3d at 599.  Thus, the Court will address the merits of all arguments raised in the motions to dismiss although Plaintiff did not respond to some of the arguments.

AO 72A
(Rev.8/8
2)

### 1.     Timeliness and Equitable Tolling

The Court agrees that the bases for most of Plaintiff's Title VII claims must be dismissed for failure to timely exhaust his administrative remedies.  In order to bring a claim under Title VII, the plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1) (providing that "[a] charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred"); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  The Eleventh Circuit has held that a failure to file charges with the EEOC within the 180-day time period bars a plaintiff's claims.  *See, e.g.*, *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir.1993); *Stafford v. Muscogee Cnty. Bd. of Educ.*, 688 F.2d 1383, 1389 (11th Cir. 1982).

Here, Plaintiff's amended complaint alleges that he filed a charge of discrimination with the EEOC on June 17, 2015.  [Doc. 5 ¶ 8].  Accordingly, any alleged acts of discrimination that occurred prior to December 19, 2014, or 180 days before the filing of the EEOC charge, are time-barred.

Plaintiff argues that equitable tolling should apply to the allegation that he was denied the use of priority boarding to attend his father's funeral in Nigeria and suggests

20

that this denial was based on his national origin. [*See* Doc. 5 ¶¶ 74-80; Doc. 17 at 3-6].

The requirement to file a timely charge with the EEOC "is non-jurisdictional, so it may be subject to equitable tolling." *Bourne v. Sch. Bd.*, 508 Fed. Appx. 907, 909 (11th Cir. Feb. 1, 2013) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *Smith v. McClammy*, 740 F.2d 925, 926 (11th Cir. 1984) (recognizing that 180-day filing requirement is subject to equitable tolling) (citing *Coke v. Gen. Adjustment Bureau, Inc.*, 640 F.2d 584, 595-96 (5th Cir. Mar. 23, 1981) (en banc), and *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1303 (5th Cir. 1979)).

"Equitable tolling is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quotation omitted); *see also Patel v. Ga. Dep't of Behavioral Health & Dev.*, 517 Fed. Appx. 750, 753 (11th Cir. Apr. 22, 2013) ("A court may toll a statute of limitations only if it finds that an inequitable event prevented the plaintiff from filing a timely action . . . .") (citing *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)). The Eleventh Circuit has recognized three situations in which the Title VII limitation periods may be equitably tolled, as follows:

> (1) during the pendency of an action against the same parties and involving the same cause of action in a state court which had jurisdiction over the subject matter of the suit but was the wrong forum under state law; (2) when the defendant concealed facts that support the plaintiff's

21

cause of action, until such time as the plaintiff knew or should have known of these facts; and (3) when the EEOC misleads a complainant about the nature of his rights under Title VII.

*Jones v. Wynne*, 266 Fed. Appx. 903, 906 (11th Cir. Feb. 26, 2008)(citing *Chappell*, 601 F.2d at 1302-03); *see also Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986) (citing *Chappell* and noting three situations under which failure to exhaust may be excused in this circuit: " 'situations in which an action was pending before a state court, situations in which the defendant had concealed facts supporting a cause of action under Title VII, and situations in which the plaintiff was misl[e]d by the defendant about the nature of his rights under Title VII' "); *Bloodworth v. Colvin*, 17 F. Supp. 2d 1245, 1251-52 (N.D. Ga. 2014) (Batten, J.) (same).

The plaintiff bears the burden to establish the grounds for equitable tolling. *Bost*, 372 F.3d at 1242 ("Although a court may equitably toll a limitations period, the plaintiffs must establish that tolling is warranted.") (citing *Justice*, 6 F.3d at 1479); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993) ("Once Buckeye raised the limitations issue, appellants bore the burden of proving that equitable tolling of the limitations period was appropriate.").

Here, Plaintiff has not met his burden. Plaintiff asserts that Defendants strategically misled him by not responding to his emails about his pay until after the

22

180-day deadline, but Plaintiff has not stated a plausible connection between the delay in responding to emails about his pay and the unrelated matter of filing a charge of discrimination based on the denial of priority boarding. Plaintiff learned of the funeral in November 2014 and was denied at that time the request for priority boarding for his travel on December 13, 2014. [Doc. 5 ¶ 74]. Even if the Court used the actual dates of travel, rather than the date of the denial of the request, as the starting date, Plaintiff's argument still fails because 180 days expired on June 11, 2015, and Plaintiff did not send an email regarding the failure to pay until June 13, 2015. Thus, the argument that Defendants misled him fails.

Plaintiff also argues that under the Third Circuit's standard, equitable tolling will apply if he can show that he was prevented "in some extraordinary way" from asserting his rights. [Doc. 17 at 4 (citing *Oshiver v. Levin Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994))]. Case law from other circuits is not binding on this Court. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). Even if this Court were to apply the Third Circuit's standard, Plaintiff still does not satisfy it. Plaintiff asserts that the extraordinary circumstance was the death of his father. [Doc. 17 at 4]. However, as this event triggered the 180-day period, Plaintiff fails to provide an extraordinary

AO 72A
(Rev.8/8
2)

circumstance that prevented him from filing a charge of discrimination within the 180-day period. Further, Plaintiff does not show or allege that the cause of action was filed in the wrong forum, i.e. it was first brought in state court; nor does Plaintiff allege that the EEOC somehow misled him. Accordingly, the Court finds that equitable tolling does not apply. As a result, all of Plaintiff's discrimination complaints predating December 19, 2014 are time-barred.

### 2. Direct Deposit and 16-hour Pay Dispute

To Plaintiff's remaining allegations that would be considered timely, the Court finds that Plaintiff has failed to plead a plausible claim for either discrimination or retaliation. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee for his participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also Biniashvili v. Bohne*, 397 Fed. Appx. 597, 598-99 (11th Cir. Sept. 28, 2010).

To prevail under Title VII, the Plaintiff is required to plead facts "sufficient to create an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). Plaintiff can establish that inference by showing that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class or was replaced by a person outside of his protected class." *Thompson v. Tyson Foods, Inc.*, 939 F. Supp. 2d 1356, 1364 (M.D. Ga. 2013) (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)).

To be sure, an exacting standard of proof is not required at the pleadings stage in an employment discrimination case. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)], also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.")). Instead, to state a cause of action under

25

Title VII for disparate treatment, a complaint need only " 'provide enough factual matter (taken as true) to suggest intentional . . . discrimination.' " *Id.* (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)). A complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" but is not required to set forth " 'detailed factual allegations.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a)(2). The factual allegations must simply "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

First, the Court agrees that Plaintiff does not allege that the direct deposit and 16-hour pay disputes (or any of the untimely actions) were actions taken against Plaintiff based on a characteristic protected under Title VII. Plaintiff's amended complaint alleges that these actions were taken as a result of the whistleblower investigation that presumably occurred in 2011. [Doc. 5 ¶¶ 21, 26-27]. However, although Plaintiff alleges that he and Aborisade are both Nigerian and alleges discrimination based on national origin, Plaintiff's amended complaint alleges that he was not the whistleblower and that people believed that Aborisade was the whistleblower, not Plaintiff. [*Id*. ¶¶ 16, 27, 28]. Thus, the Court is left guessing as to how Plaintiff's national origin and the whistleblower investigation are connected to the adverse actions taken against Plaintiff.

26

Moreover, with regard to the direct deposit issue, Plaintiff asserts that "[he] is aware that all other employees similarly situated are setup with direct deposit in two weeks and do not have to pay bank maintenance fees for not having a direct deposit to their checking accounts or suffer any inconvenience as a result." [Doc. 5 ¶ 98]. Similar allegations were made as to other actions that the Court deems untimely. [*See e.g.* ¶¶ 47, 50, 67, 72]. Plaintiff's complaints untethered to any protected characteristic are similar to those found wanting in *Uppal v. Hosp. Corp. of Am.*, 482 Fed. Appx. 394 (11th Cir. June 13, 2012). In that case, the plaintiff's complaint made multiple claims of discrimination on the repeated allegation that " '[o]ther similarly situated employees outside Plaintiff's protected classes' engaged in similar misconduct, but were not disciplined." *Id.* at 396. In affirming the partial grant of the defendant's motion to dismiss, the Eleventh Circuit noted that the plaintiff never supplemented the allegations with factual detail such as a brief description of how the alleged comparators were outside of her protected class. *Id.* As a result, the court held that "Dr. Uppal has alleged no facts to support that gender, race or national origin played any role in the disparate treatment." *Id.* Plaintiff's amended complaint suffers from the same defect.

AO 72A
(Rev.8/8
2)

The pay dispute, however, does identify a person with some factual detail.

Plaintiff alleged that

> Around the same June 2015 time period, DAL Global female employee
> Zainab C. assigned to SunTrust Account as plaintiff, failed to sign the
> SunTrust DGS time sheet and reported to Site Supervisor Scott Stedtefeld
> that she was owed salary for 16 hours worked that weekend in question
> received better treatment as a live check was cut for Zainab C. same day
> and she was apologized to by Defendant Segun K. Aborisade, who offered
> to allow her husband that works nearby Delta Global Services
> Administrative Office to stop by same day to pick up live check in lieu of
> salary being deposited in her direct deposit account at the bank that
> Friday.

[Doc. 5 ¶ 117]. However, these comparator allegations fail for two reasons. First,

nowhere in the amended complaint does Plaintiff allege that he was discriminated based

on gender, which is the only identifiable protected characteristic of the comparator that

can be gleaned from the just-quoted paragraph. The only protected characteristic

identified by Plaintiff was national origin.[5] [*See, e.g.,* ¶¶ 1, 27, 79, 80]. Second, the

---

[5] Plaintiff also appears to allege discrimination based on religion when,
prior to the whistleblower investigation, one of the account managers helped employees
that were members of her church. [*See id.* ¶ 13]. However, Plaintiff has not clearly
advanced such a claim specifically as to himself. Rule 10 of the Federal Rules of Civil
Procedure is supposed to work in tandem with Rule 8 "to require the pleader to present
his claims discretely and succinctly, so that [(1)] his adversary can discern what he is
claiming and frame a responsive pleading, [and (2)] the court can determine which facts
support which claims and whether the plaintiff has stated any claims upon which relief
can be granted." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082-83 (11th Cir. 1996)
(quoting *T.D.S. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985)

person identified is not similarly situated because Plaintiff alleges that, unlike the comparator, he signed the time sheet. [*Id*. ¶¶ 118, 123].

Thus, Plaintiff has failed to plausibly state discrimination based on a protected characteristic for either the pay dispute or the direct deposit issues. *See McCray v. Potter*, 263 Fed. Appx. 771, 773 (11th Cir. Jan. 16, 2008) (affirming dismissal of complaint where plaintiff failed to allege that any discriminatory act was taken because of her race, color, religion, sex, or national origin).

Alternatively, assuming that Plaintiff has sufficiently alleged discrimination based on a protected characteristic, the direct deposit assertion and the one-time failure to receive pay do not amount to adverse employment actions. Demonstration of an "adverse employment action is an indispensable element of a Title VII plaintiff's case." *Davis*, 245 F.3d at 1246. "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Id.* at 1238. To establish an adverse employment action, a plaintiff must establish an "ultimate employment decision," such as termination, failure to hire, or demotion," or demonstrate that he suffered "a *serious*

_____

(Tjoflat, J., dissenting)). Although a court liberally construes a *pro se* litigant's complaint, a *pro se* party "still must comply with the procedural rules governing the proper form of pleadings," including Rules 8 and 10. *Heard v. Nix*, 170 Fed. Appx. 618, 619 (11th Cir. Feb. 23, 2006) (per curiam).

AO 72A
(Rev.8/8
2)

*and material* change in the terms, conditions, or privileges of employment." *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (quoting *Davis*, 245 F.3d at 1239) (emphasis in original). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* "The 'serious and material change' requirement has also been applied . . . to Title VII retaliation claims. *Crawford*, 529 F.3d at 971.

Here, neither the 24-week delay in setting up Plaintiff's direct deposit, [*see* Doc. 17 at 7], or the one-time failure to pay him, constitute either an "ultimate employment decision" or a "serious and material change" in the terms, conditions, or privileges of employment. First, while it may have been inconvenient for Plaintiff to receive "live checks," rather than direct deposit, this does not amount to an adverse employment action; nor should the employer be responsible for fees incurred by Plaintiff's bank account choices. *See Davis*, 245 F.3d at 1242 ("[T]he protections of Title VII simply do not extend to everything that makes an employee unhappy.").

Plaintiff appears to allege two incidents where he was not paid or there was a delay in pay: for the period worked May 16 and 17, 2015 and the period of June 6 and 7, 2015, each for a period of 16 hours. [Doc. 5 ¶¶ 101, 109, 119]. The amended

AO 72A
(Rev.8/8
2)

complaint provides that Plaintiff received eight hours worked from the May time period. [*Id.* ¶¶ 103, 104, 113]. However, Plaintiff does not appear to base his claims for any amount that may be outstanding from May, but only bases his claims on the missing 16 hours from June 6 and 7, 2015. [*See id.* ¶¶ 119, 140-41 (breach of contract claim); Doc. 17 at 7, 8 (indicating that the May 2015 payroll dispute was resolved, but was still owed for June 2016)].

DGS cites to several cases in support of its argument that "allegations of minor discrepancies in pay or benefits" are not adverse employment actions. [Doc. 6-1 at 11 (citing *Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *16-17 (S.D.N.Y. Mar. 17, 2009); *Dennis v. Potter*, No. 1:08-CV-198-TLS, 2012 WL 8251513, at *13 (N.D. Ind. Mar. 23, 2013); *Fanning v. Potter*, No. 4:07CV01194 SWW, 2009 WL 497573, at *3 (E.D. Ark. Feb. 25, 2009); *Siler v. Hancock*, 510 F. Supp. 2d 1362, 1381 (M.D. Ga. 2007))]. However, all of these cases involve only a delay in receiving the pay and the plaintiff eventually received the pay. Here, Plaintiff alleges that as of January 2016, he still has not received pay for the worked performed in June 2015. [*See* Doc. 17 at 7].

Nevertheless, Plaintiff fails to make an argument that this one-time failure amounts to an adverse employment action under Title VII, rather than a mere pay

AO 72A
(Rev.8/8
2)

dispute for which Plaintiff also brought a breach of contract claim. *See Speaks v. City of Lakeland*, 315 F. Supp. 2d 1217, 1225 (M.D. Fla 2004) (holding that the Supreme Court's definition of adverse or tangible employment action "requires a 'significant change in status' and continuing to work with the same job, pay, benefits, and responsibilities is not a change in status . . . .") (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

Courts, however, recognize that, withholding pay in retaliation for opposing the employer's unlawful employment practices may constitute an adverse employment action as such action would discourage an employee from engaging in protected conduct. *See e.g. Rojas v. GMD Airlines Services, Inc.*, Civil No. 13-1578 (BJM), 2015 WL 5254399, at *14-15 (D.P.R. Sept. 9, 2015) (holding that withholding paycheck in retaliation of filing EEOC charge is an adverse employment action) ("Withholding a paycheck is an adverse employment action under Title VII's substantive discrimination provision because it inflicts direct economic harm on the employee."); *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 100 (2d Cir. 2002) ("First, the withholding of an employee's paycheck due to a supervisor's sexual harassment clearly constitutes a tangible employment action . . . . 'Docking another's pay' is a 'direct economic harm' that can be inflicted only by a supervisor. . . . Second, the lost use of

AO 72A
(Rev.8/8
2)

wages for a period of time is, by itself an economic injury that can qualify as a tangible employment action.");[6] *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73 (2006) (suspension without pay for retaliatory purposes, even if the employer later provided backpay, could be a materially adverse employment action).

However, although Plaintiff asserts a claim for Title VII retaliation, the conduct complained of by Plaintiff was not protected by Title VII. Plaintiff's complaint alleges that he repeatedly complained and identified to DGS senior management unlawful activities which included "(a) failing to establish and implement uniform policies, procedures and practices that conform to of [sic] Department of Labor job classification regulations. Illegal classification of employees for purposes of administering company offered benefits[;] (b) Discriminatory scheduling practices by [DGS] managers that gives favorable schedules and posting to their social acquaintances, friends and family[;] (c) abuse of the ready reserve program by the Account managers; hiring of staff who are never scheduled to work but enjoy flight benefits as other employees who

_____

[6]     The Court notes that in *Jin*, the Second Circuit recognized that the withholding of pay was an adverse employment action under Title VII discrimination, not just Title VII retaliation. However, in that case, withholding pay by a supervisor was done in retaliation for the employee's refusal of sexual advances. *Jin*, 310 F.3d at 100. Here, Plaintiff does not allege that such failure to pay him was for refusal of sexual advances or based on any other conduct prohibited under Title VII.

33

AO 72A
(Rev.8/8
2)

are constantly harassed to work the undesirable shifts[;] (d) Arbitrary company benefits package that reserves eligibility to company benefits such as bereavement pay, the employee pass travel program, post retirement travel pass to the discretion of the Account Managers. [DGS] travel pass policy's definition of 'eligibility' as communicated by Defendant Darryl Cooper in a memo to all employees is unlawful[; and] (e) Discrimination based on the outcome of the Ready Reserve Program whistle-blower investigation." [Doc. 5 ¶¶ 9-10]. None of these "unlawful activities" are prohibited by Title VII and Plaintiff's amended complaint does not show that he complained of activities that he believed to be unlawful under Title VII. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) ("A plaintiff engages in 'statutorily protected activity' when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices.") (internal quotations and citation omitted).

The only conduct that Plaintiff engaged in that was protected under Title VII was filing of the EEOC charge on June 17, 2015, [*id.* ¶ 8], and Plaintiff does not allege any acts, much less an adverse employment action, occurring after filing the EEOC charge.

34

AO 72A
(Rev.8/8
2)

Further, even if Plaintiff's complaint is found to have properly and timely pleaded a Title VII discrimination or retaliation claim, the Title VII claims are subject to dismissal against Aborisade. Title VII permits suits only against a plaintiff's employer, not against co-employees or supervisors in their individual capacity. *Bryant v. Dougherty Cnty. Sch. Sys.*, 382 Fed. Appx. 914, 916 n.1 (11th Cir. June 15, 2010); *see also Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (holding that because the individual defendants could not be considered the plaintiff's employer, they also could not be held liable under the ADEA or Title VII).

As a result, Plaintiff's Title VII discrimination and retaliation claims lack legal merit and, accordingly, the undersigned **RECOMMENDS** that DGS and Aborisade's motions to dismiss these claims be **GRANTED**.

## IV. *Defendants Delta and Cooper's Motion to Dismiss, [Doc. 23]-Federal Claims*

In Delta and Cooper's joint motion to dismiss, [Doc. 23], they first essentially join in DGS's arguments in support of its motion to dismiss. [Doc. 23-1 at 2]. They also argue that there is no individual Title VII liability against Cooper, [*id.* at 2-3], and

AO 72A
(Rev.8/8
2)

that Plaintiff does not allege that Delta was his employer, and thus it cannot be liable to him under Title VII. [*Id.* at 3].

In addition, in a footnote, Delta and Cooper assert that neither of them have "yet been properly served in this matter, and both Delta and Cooper expressly reserve all defenses based on the failure of service." [Doc. 23-1 at 1 n.1]. The Eleventh Circuit has held, that where a plaintiff fails to effect service of process, it is improper for the district court to reach the merits of the case and issue a dismissal with prejudice; instead, such a case should be dismissed without prejudice. *Jackson v. Warden, FCC Coleman-USP*, 259 Fed. Appx. 181, 182-83 (11th Cir. Dec. 12, 2007) (citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.")); *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1350 (N.D. Ga. 2012) (Shoob, J.). Thus, before addressing Delta and Cooper's arguments on the merits, the Court must first decide whether the Court has personal jurisdiction over them. Plaintiff's response in opposition essentially repeats the arguments made in his brief in opposition to the motions to dismiss the initial complaint and does not address Delta and Cooper's assertion that they were not properly served. [*See* Doc. 28, *passim*].

36

AO 72A
(Rev.8/8
2)

As to this argument, the Court concludes that Delta and Cooper did not properly assert lack of service/insufficiency of service by their conclusory statement contained in the footnote. A passing reference to an issue without "elaborat[ion] [of] arguments on the merits" constitutes abandonment or waiver. *Wright v. Lankford*, 562 Fed. Appx. 769, 776 n.5 (11th Cir. Apr. 2, 2014) (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (considering argument not elaborated upon as abandoned)); *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 324 (5th Cir. 1977) (holding that mere mention in brief on appeal that district court was in error, absent any specific argument as to how the court was in error, was insufficient to present the matter for adjudication on appeal),[7] *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997).

Although Plaintiff's failure to contradict Defendants' statement on service, deficient as it is, ordinarily would be fatal, district courts in the Eleventh Circuit have held that to challenge service of process, the party challenging service must first produce "affidavits that, in non-conclusory fashion, demonstrate the absence of jurisdiction" based on invalid service of process. *Carrier v. Jordaan*,

---

[7]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

714 F. Supp. 2d 1204, 1211 (S.D. Ga. 2008) (citation and quotation marks omitted); *Lowdon PTY Ltd. v. Westminster Ceramics. LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008) (citation omitted); *Bell v. Integrated Health Servs., Inc.*, Civil Action No. 06-0356-WS-M, 2007 WL 274364, at *2 (S.D. Ala. 2007); *see also Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 105 (D.N.J. 2011) (refusing to dismiss complaint for improper service where defendants maintained in a footnote of the brief supporting the motion to dismiss that service upon the corporate defendant was improper, but did not make a motion pursuant to Rule 12(b)(5) or provide the grounds for such a motion).

The Court applies the rule set out in the other cases in this case. Delta and Cooper's passing reference to deficient service in a footnote does not inform the Court or Plaintiff of the specific deficiency in process, such as whether their complaint about service was based on a total failure to serve the complaint and summons, or some other defect in the service. Thus, they are not entitled to dismissal on this ground.

Turning to Delta and Cooper's arguments on the merits, the undersigned **RECOMMENDS** that their motion to dismiss be **GRANTED** as to Plaintiff's federal claims for the same reasons advanced in DGS and Aborisade's motions.

38

As for the separate grounds advanced by Delta and Cooper, the motion also is due to be granted. First, Delta and Cooper contend that neither was his employer for Title VII purposes. Plaintiff did not address this argument in his response. [*See* Doc. 28 *passim*]. As to Delta, Title VII relief may be imposed only against an employer. *Udoinyion v. The Guardian Security*, 440 Fed. Appx. 731, 734 (11th Cir. Sept. 7, 2011). As there is no claim in the amended complaint that Delta, as opposed to DGS, was Plaintiff's employer, he may not bring a Title VII claim against it. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiary. . . ." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). As a result, "[a] corporation is a legal entity separate and apart from its stockholders[,] and the corporate fiction should not be disregarded because of identity of corporate names, stockholders and officers and the fact of ownership of capital stock in one corporation by another." *See Overstreet v. Southern Ry. Co.*, 371 F.2d 411, 412 (5th Cir. 1967) (citation omitted); *see also Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1130-31 (W.D. Wis. 2004) ("A basic tenet of corporate law is that subsidiaries and parent corporations are designed to be legally separate from one another."). Thus, Delta is not liable for any acts of its subsidiary merely because it is DGS's parent. Further, the amended

39

complaint provides no grounds for the Court to consider whether Delta and DGS are "highly integrated with respect to ownership and operations," such that the corporations may be viewed as a " 'single employer' for purposes of establishing Title VII liability.' " *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

In addition, there are no factual allegations against Delta in the amended complaint. This defect is not saved by making claims in the amended complaint generically against "all Defendants." Such a pleading technique in which no factual allegations are made specifically against Delta is the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" and "naked assertion [ ] devoid of further factual enhancement" condemned by the Supreme Court. *See Iqbal*, 556 U.S. at 678. As a result, the undersigned concludes that Plaintiff's reference to Delta in the caption of the amended complaint and his general allegation of being harmed by all Defendants does not state a claim against Delta. *See Mazuch v. Rosier*, No. 3:08-cv-18, 2008 WL 4844730, *7 (S.D. Ga. Nov.7, 2008) (finding that plaintiff failed to state a claim where he only referred to defendant in the caption of the complaint); *Walker v. Sun Trust Bank of Thomasville, Ga.*, No. 7:07-cv-173, 2008 WL 4004714, *3 (M.D. Ga. Aug.26, 2008) (dismissing defendants when they

AO 72A (Rev.8/8 2)

were only mentioned in the caption because complaint did not meet the Fed. R. Civ. P. 8(a)(2) pleading requirements); *Johnson v. Fla. Dep't of Law Enforcement*, No. 2:07-cv-57, 2008 WL 3927241, *3 (M.D. Fla. Aug. 21, 2008); *Wilder v. Wallen*, No. 1:06-cv-103, 2007 WL 120162, *1 (S.D. Ga. Jan.11, 2007) ("Plaintiff does not state a valid claim by simply naming [the defendant], as a Defendant in the caption of his complaint and then making no further mention of this Defendant."); *see also Kadar Corp. v. Milbury*, 549 F.2d 230, 232 (1st Cir. 1977) (affirming dismissal where individual was named only in caption of complaint because status as intended defendant was "so nebulous as plainly to warrant dismissal"); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints."); *Randolph v. Cooper Indus.*, 879 F. Supp. 518, 523-24 (W.D. Pa. 1994) (finding *pro se* plaintiff failed to state a claim against defendant who was only mentioned in caption of complaint).

AO 72A
(Rev.8/8
2)

As to Cooper, the Title VII claims against him are subject to dismissal for the same reason that Aborisade is not a proper defendant, that is, Title VII liability is limited to employers. *Dearth*, 441 F.3d at 934-35.

Therefore, the federal claims against Delta and Cooper are due to be dismissed.

## V.   *Plaintiff's Motion for Leave to File Second Amended Complaint, [Doc. 32]*[8]

Plaintiff argues that his Second Amended Complaint would resolve any issues that would require dismissal of the First Amended Complaint, [Doc. 32 at 2, 3]. Plaintiff seeks to add Cyril Turner, who Plaintiff alleges is President of DGS and

---

[8]   The undersigned concludes that he can rule on Plaintiff's motion to amend by issuing an order.  Although there is some dispute among the federal courts as to whether a motion to amend a complaint is a dispositive motion or a non-dispositive motion, "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.' "  *See E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (Baverman, M.J.).  Additionally, in two 2010 unpublished decisions, the Eleventh Circuit has indicated that it views motions to amend as non-dispositive motions, which a magistrate judge may rule on through an order instead of a report and recommendation.  *See Reeves v. DSI Sec. Servs., Inc.*, 395 Fed. Appx. 544, 548 (11th Cir. Aug. 31, 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 Fed. Appx. 897, 899-900 (11th Cir. June 18, 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.") (citing cases); *cf. Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988) (reversing a magistrate judge's denial of a motion to amend complaint as an abuse of discretion, but not addressing whether the magistrate judge had the authority to rule upon the motion).  The undersigned therefore resolves Plaintiff's motion for leave to amend by order.

AO 72A
(Rev.8/8
2)

DGS's "alter ego," and that he would like to add two additional claims against DGS and Delta for violations of the Airline Deregulation Act of 1978 ("ADA") and the Fair Labor Standards Act ("FLSA"). [*Id*. at 2]. Plaintiff also appears to seek to add claims of retaliatory hostile work environment, constructive dismissal, retaliation, disparate treatment and disparate impact under Title VII. [*Id*. at 3, 7-10].

### A.    Timeliness

In support of his motion, Plaintiff asserts that Defendants cannot assert that they will be prejudiced by the proposed amendments which are sought early in the litigation and seek to address the alleged deficiencies raised by Defendants. [*Id*. at 4]. Plaintiff additionally argues that there is no evidence of undue delay, bad faith, or dilatory motive, and that some of the facts in the proposed Second Amended Complaint arose only after this case began. [*Id*. at 5]. Defendants argue that Plaintiff's motion to amend is untimely because it was filed three months after the Court entered its Scheduling Order, Plaintiff does not offer any explanation for the delay in moving to amend, and the new claims that Plaintiff seeks to assert have been known to him for years. [Doc. 33 at 1-2].

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend a pleading as a matter of right within twenty-one days after service of the original

AO 72A
(Rev.8/8
2)

pleading, or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Thereafter, a party may amend a pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Supreme Court and the Eleventh Circuit have enumerated several factors that justify denial of a motion for leave to amend, including undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failure to cure deficiencies by previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001). Rule 15 "contemplates that leave shall be granted unless there is a substantial reason to deny it." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985); *see also Laurie, id.* Also, courts are generally lenient in construing *pro se* pleadings and in granting *pro se* plaintiffs leave to amend their complaints. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991) (holding that when it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice),

44

*overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).[9]

"A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999); *see also Mizzarro v. Home Depot*, 544 F.3d 1230, 1255 n.4 (11th Cir. 2008) ("Although submitting a proposed amended complaint is good practice and we highly recommend it, our case law makes clear that failing to do so is not a basis for denying leave to amend. A motion for leave is sufficient if the motion itself 'set[s] forth the substance of the proposed amendment[.]' " (quoting *Long*, 181 F.3d at 1279)); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006) ("[T]he movant must either attach a copy of the proposed amendment to the motion or set forth the substance thereof"). In this case, Plaintiff has set forth the substance of his amendment in his motion.[10]

---

[9] Although *Wagner* overruled *Bank* as to counseled litigants, it specifically stated that it did not address *pro se* litigants. *See Wagner*, 314 F.3d at 542 n.1. Thus, the *Bank* rule remains applicable to *pro se* litigants. *Id.*; *see also Duff v. Steub*, 378 Fed. Appx. 868, 872 n.5 (11th Cir. Apr. 29, 2010).

[10] Federal Rule of Civil Procedure 16(b) requires courts to enter scheduling orders that limit the time in which parties may amend the pleadings. Fed. R. Civ. P. 16(b). These scheduling orders "control the subsequent course of the action unless modified by a subsequent order," FED. R. CIV. P. 16(e), and may be

AO 72A
(Rev.8/8
2)

The Court finds that Plaintiff's motion is untimely, however, this is not enough to warrant denial of the motion. *See Foman*, 371 U.S. at 182; *Laurie*, 256 F.3d at 1274. It is true that "[a] district court may find undue delay when the movant knew of facts

---

modified "upon a showing of good cause," FED. R. CIV. P. 16(b). The Eleventh Circuit Court of Appeals has held that "[t]his good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.' " *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's notes).

The Eleventh Circuit has held that a party seeking to amend a pleading after the expiration of the deadline established in the scheduling order must satisfy a two-step test. He first must meet the good cause standard of Rule 16. If he does so, he then must show that an amendment would be proper in accordance with Rule 15. *Sosa*, 133 F.3d at 1419. "If [courts] considered only Rule 15(a) without regard to Rule 16(b), [they] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* Despite the familiar axiom that leave to amend "shall be freely given when justice so requires" under Rule 15, the binding precedents dictate that leave to amend may only be granted after the Rule 16 deadline upon a showing by the movant that "the schedule [could not] 'be met despite the diligence of the party seeking the extension,' " *Sosa*, 133 F.3d at 1418.

The Court issued its scheduling order on January 12, 2016, [Doc. 20], and Plaintiff did not move to again amend his complaint until April 8, 2016. [Doc. 32]. While Plaintiff does not establish good cause for excusing the requirements of the scheduling order, which generally required motions to amend to be filed within 30 days of the entry of the order, [*see* Doc. 20 at 1-2]; LR App.B at 12, Plaintiff specifically stated in his separately filed proposed preliminary planning report that he intended to move to amend following discovery. [Doc. 16 at 3]. Since the scheduling order did not expressly impose a deadline for moving to amend, the Court does not consider Rule 16(b) to be a fatal impediment to Plaintiff's motion to amend.

46

supporting the new claim long before the movant requested leave to amend, *and* amendment would further delay the proceedings. . . . [P]rejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) (internal quotations and citations omitted) (emphasis added). As Plaintiff points out, discovery has not yet begun and Defendants would not be prejudiced by any amendment. Further, although this will be the second amendment to Plaintiff's complaint, this R&R is the first time that Plaintiff's pleadings have come under legal-sufficiency scrutiny. Also, the Court finds no evidence that Plaintiff is acting in bad faith. Thus, the Court will examine the Plaintiff's motion for viable claims.

## B. *Airline Deregulation Act of 1978*

Plaintiff seeks to add a claim under the Airline Deregulation Act of 1978 (hereinafter "the Act") on the basis that Defendants "systematically engaged in an intentional scheme and conduct that violated [the Act]." [Doc. 32 at 4]. Plaintiff elaborates that the DGS policy change was "an intentional fraudulent scheme setup so that employees such as Plaintiff will subsidize the free travel of their co-workers whom have been illegally classified as employees in 'airline or aviation related assignment.' "

47

[*Id.* at 5].  Plaintiff argues that this is anti-competition and cruel punishment to those employees who do not work in the aviation or airline related positions.  [*Id.*].  Plaintiff further argues that "[t]he Government stopped subsidizing air travel fares in 1978, therefore any policy by Delta Airlines that invokes any Government regulation or compliance audit as reason for it violates the [Act]."  [*Id.* at 6].

In response, Defendants argue that the Act creates no private right of action for individuals.  [Doc. 33 at 2 (citing 49 U.S.C. § 40101 *et seq*; *Casas v. Am. Airlines, Inc.*, 304 F.3d 517 (5th Cir. 2002))].  Plaintiff did not respond to Defendants' argument in his reply brief.

Plaintiff's motion does not specifically address which provision of the Act that he claims Defendants allegedly violated, however, the Court presumes that Plaintiff alleges that Defendants violated 49 U.S.C. § 41712, which governs unfair and deceptive practices and unfair methods of competition.  However, that provision only "gives the [Department of Transportation] the power to 'investigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation" and does not create a private right of action.  *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223, 1224 (11th Cir. 2014) (quoting 49 U.S.C. § 41712(a)).  Accordingly, Plaintiff cannot assert

48

AO 72A
(Rev.8/8
2)

a claim under the Act.  Thus, Plaintiff's motion for leave to amend his complaint to add a claim under the Airline Deregulation Act of 1978 is **DENIED** on grounds of futility.

### C.    *Additional Title VII Claims*

Plaintiff asserts additional facts in support of his Title VII claim and appears to assert claims for retaliatory hostile work environment, constructive dismissal, retaliation, disparate treatment and disparate impact.  However, just as in his First Amended Complaint, these additional facts do not allege that any harassing or discriminatory conduct was based on a protected characteristic, nor does Plaintiff allege that his termination or any other additional acts alleged that occurred since filing the EEOC charge or the lawsuit were done in retaliation for Plaintiff engaging in conduct protected under *Title VII*.  *See e.g. Wheatfall v. Bd. of Regents of Univ. Sys. of Ga.*, 9 F. Supp. 3d 1342, 1359 (N.D. Ga. 2014) ("A prima facie case of retaliatory hostile work environment, like a prima facie case of retaliation generally, requires the establishment of protected activity.") (Batten, J.) (citing *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012)); *see also Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) ("[A] plaintiff wishing to establish a hostile work environment claim [must] show:  (1) *that he belongs to a protected group*; (2) that he has been subject to unwelcome harassment; (3) *that the harassment must have been*

49

*based on a protected characteristic of the employee, such as national origin*; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of various or of direct liability.") (emphasis added). Accordingly, Plaintiff's motion to add claims under Title VII is **DENIED** on grounds of futility.

### D. FLSA

Plaintiff's sole allegation in support of adding a claim for FLSA is based on DGS' failure to pay Plaintiff for the hours he worked on June 6, 2015. [Doc. 32 at 4]. Defendants argue that Plaintiff has not identified a cognizable claim under the statute and does not allege any facts plausibly showing that he did not receive minimum wage in any week or that he was deprived of any required overtime pay. [Doc. 33 at 3]. Defendants also argue that, even if the allegation that DGS failed to pay him were true, a simple unpaid wage claim is not a federal claim under the FLSA. [*Id.* (citing *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991))]. Plaintiff's reply did not address Defendants' arguments.

There is not much case law on the failure to pay regular compensation. The Eleventh Circuit recognizes that "Congress enacted the FLSA in 1938 to 'guarantee

AO 72A
(Rev.8/8
2)

either regular or overtime compensation for all actual work or employment.' " *Dade Cty. Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). There does appear to be support for Defendants' argument that an FLSA claim must be based on the failure to pay minimum wage or the failure to pay overtime wages, and such claims for unpaid regular wages, absent sufficient allegations of discrimination, is a breach of contract matter. *See Beard v. Langham*, 649 F. Supp. 2d 1332, 1334 n.2 (S.D. Ala. 2009). However, the Eleventh Circuit also recognizes a liquidated damages claim under the FLSA for an unreasonable delay for payment of wages. *See Benavides v. Miami Atlanta Airfreight, Inc.*, 322 Fed. Appx. 746, 747 (11th Cir. Apr. 3, 2009); *Arroyave v. Rossi*, 296 Fed. Appx. 835, 836-37 (11th Cir. Oct. 17, 2008) (citing *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1945)); *Del Rosario v. Labor Ready Southeast Inc.*, 125 F. Supp. 3d 1300, 1313 (S.D. Fla. 2015) ("Therefore, the rule in the Eleventh Circuit appears to be that any employer must pay its employees within a reasonable time after the end of the pay period. Minimum wages become unpaid, and an employer is liable under the FLSA for liquidated damages, when they are 'unreasonably late during the relevant period.' ") (citing *Arroyave*); *see also Wilson v. Regions Fin. Corp.*, Civil Action No. 2:14-cv-105-RWS, 2016 WL 1109168, at *3

51

(N.D. Ga. Mar. 22, 2016) (Story, J.) (holding that even if employer made late payment of overtime wages, it still may be liable for liquidated damages under *Broughton* and *Arroyave*).

The cases cited by Defendants are distinguishable. First, Defendants cite *Rance v. Rocksolid Granite USA, Inc.*, 292 Fed. Appx. 1, 2 (11th Cir. July 16, 2008), which required that "[t]o establish a prima facie case of an FLSA violation, [a plaintiff] must show as a matter of just and reasonable inference the amount and extent of his work in order to demonstrate that he was inadequately compensated under FLSA." In that case, the plaintiff alleged that he did not receive wages due to him for a portion of one work day. *Id.* The Eleventh Circuit found that Plaintiff failed to establish a *prima facie* case because the complaint and attached documentation did not provide evidence of the amount and extent of his work. *Id.* Specifically, the Eleventh Circuit noted that the plaintiff attached an email from his supervisor to his complaint in which the plaintiff asked his supervisor when he would be paid for "the work done at the Miami location on or about March 28, 2007" and the supervisor responded by asking "How many hours did you end up working that day? Let me know and I will get a check out." *Id.* The Eleventh Circuit found that the plaintiff's complaint did not allege that he responded

to the email message and thus "failed to demonstrate that any inadequate compensation was a result of [the employer's] actions, rather than his own." *Id.*

Here, Plaintiff's first amended complaint alleges that on June 13, 2015, he sent an email to Aborisade, his supervisor, and the team leader, inquiring as to his pay check for the 16 hours he worked "last weekend," i.e. June 6-7, 2015, and Aborisade responded "Did you have live check or direct deposit? I hope you signed the time sheets. I will have Arnold Perkins review the payroll on Mondsy [sic] morning to find out what went wrong." [Doc. 5 ¶¶ 115, 116]. Plaintiff also inquired as to his hours and time sheet on June 14, 2015. [*Id*. ¶ 118]. Although there is no allegation that Plaintiff responded to Aborisade's email as to whether he had a paper check or direct deposit, unlike the plaintiff in *Rance*, Plaintiff presented enough information to DGS that it could have issued him a check in a reasonable time period; specifically, that Plaintiff presented the number of hours worked and Aborisade told him that Perkins would review the payroll to find out what happened. Thus, *Rance* is distinguishable and the allegations satisfy a *prima facie* case of an FLSA violation.

The other two cases cited by Defendants are claims for overtime wages and are thus inapplicable. [*See* Doc. 33 at 3 (citing *St. Croix v. Genentech, Inc*, No. 8:12-cv-891-T-33EAJ, 2012 WL 2376668, at *2 (M.D. Fla. June 22, 2012); *Atlanta Prof'l*

AO 72A
(Rev.8/8
2)

*Firefighters Union, Local 134*, 920 F.2d at 806)].

Therefore, the Court finds that amendment of the complaint to add a claim under the FLSA against DGS would not be futile. While the facts giving rise to the FLSA claim were in existence when Plaintiff filed both the initial and first amended complaints, none of the other factors pointing towards denial of his motion to amend are present.

### E.    Cyril Turner

Plaintiff seeks to add Cyril Turner as President of DGS to the claims related to the travel pass policy change, and as a result, seeks to assert against him claims of fraud and a violation of the Airline Deregulation Act. [Doc. 32 at 6, 11, 13]. As explained above, there is no private cause of action under the Airline Deregulation Act, and therefore an assertion of a claim pursuant to the Act would be futile. Moreover, as discussed below, Plaintiff's claims for fraud are due to be dismissed, and thus any fraud claim against Turner likewise would be futile. Therefore, Plaintiff's motion to add Cyril Turner as a defendant is **DENIED** on grounds of futility.

AO 72A
(Rev.8/8
2)

## VI.    Motions to Dismiss– State Law Claims

Defendants also move to dismiss Plaintiff's state-law claims.[11]    The Court

---

[11]    If the District Judge agrees that Plaintiff's Title VII claims should be dismissed, and disagrees (if DGS appeals) with the Court's conclusion that Plaintiff should be allowed to amend his complaint to assert the FLSA claim discussed in Section IV.D *supra*, then the Court recommends that the District Court not exercise supplemental or pendent jurisdiction and dismiss Plaintiff's state law claims without prejudice.  The Supreme Court has stated that "if the federal claims are dismissed before trial,. . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but this rule is not mandatory: "The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The Court is empowered to act *sua sponte*.  *Rittenhouse v. DeKalb County*, 575 F. Supp.  1173, 1175 (N.D. Ga. 1975).  The decision whether or not to exercise supplemental jurisdiction over the remaining state law claims is typically within the discretion of the court.  *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1550 (11th Cir. 1992).

Congress has listed specific circumstances in which a district court may decline to exercise supplemental jurisdiction over a state law claim joined with a claim over which the court has original jurisdiction.  The district court may refuse to exercise supplemental jurisdiction if, *inter alia*, the state claim raises a "novel or complex issue of State law" or "substantially predominates over" the claim over which the Court has original jurisdiction, 28 U.S.C. § 1367(c)(1) & (2), or  the district court has dismissed all claims over which it has original jurisdiction, § 1367(c)(3).  Additionally, a district court may decline to exercise jurisdiction over a state claim if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c)(4).  If, after examining the factors listed in § 1367(c), the district court "decides that it has the discretion . . . to decline jurisdiction . . . it should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction." *Palmer v. Hosp.*

AO 72A
(Rev.8/8
2)

discusses them in order.

**A.    Fraud**

First, DGS contends that Plaintiff's fraud claim fails to state a plausible claim for relief as Plaintiff fails to allege any facts suggesting that DGS intended for Plaintiff to act on any alleged statement; that Plaintiff relied on any alleged statement or that Plaintiff was damaged by such reliance. [Doc. 6-1 at 17-18]. Plaintiff did not provide any response to this argument. [*See* Docs. 7, 17, *passim*].

The Court agrees with DGS that Plaintiff's amended complaint does not state a claim for fraud. In order to state a claim for fraud under Georgia law, the plaintiff must allege: (1) a false representation; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) damage proximately caused by the

_____

*Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994). The Court also should consider fairness and comity. *Id.*

If no federal claims remain in the case, the District Court should not exercise supplemental jurisdiction. If there are no federal claims, then the remaining claims are based exclusively on state law. Further, the Eleventh Circuit has encouraged district courts to decline to exercise supplemental jurisdiction where the district court has dismissed all federal claims prior to the start of trial. *See Murphy v. City of Aventura*, 383 Fed. Appx. 915, 919 (11th Cir. June 18, 2010); *Busse v. Lee Cnty.*, 317 Fed. Appx. 968, 974 (11th Cir. Mar. 5, 2009). Moreover, "[n]eedless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726.

representation.  *Sun Nurseries, Inc. v. Lake Erma, LLC*, 316 Ga. App. 832, 835, 730 S.E.2d 556, 561 (2012).  Here, the allegedly false representation was the reason given for changing the travel pass program policy which was "[g]overnment regulations allow only employees working in an airline or aviation related positions eligibility for free travel privileges."  [Doc. 5 ¶ 145].  Plaintiff alleges that "Defendant made intentional representations that they knew at that time to be false, Defendant made these representations with intention and purpose of deceiving plaintiff and plaintiff was damaged when he relieved on the falsehood and purchased flight passes at a rate other employees in similar position of employment did not have to pay."  [*Id*. ¶ 146].  However, Plaintiff fails to allege how he justifiably relied on this allegedly false statement.  Plaintiff simply alleges that he purchased plane tickets but did not allege that he was an employee working in an airline or aviation related position and did not enjoy the benefits of being in that position.  In fact, Plaintiff's complaint is based on the fact that he was not in an airline or aviation position and the new policy adversely affects him.  This is not a basis for a fraud claim, and even if the statement that "government regulations allow only employees working in airline or aviation related positions eligibility for free travel privileges" was false, there is no allegation that Plaintiff acted based on this statement or that he relied on it.  Notably, Plaintiff's

AO 72A
(Rev.8/8
2)

amended complaint suggests that he never believed such statement and questioned the veracity of the statement since the new policy was sent out. [*See id. ¶ 66*]. Because Plaintiff has failed to allege justifiable reliance, the undersigned **RECOMMENDS** that the motions to dismiss Plaintiff's claim for fraud be **GRANTED**.

**B.    Uniform Deceptive Trade Practices Act ("UDTPA")**

Next, DGS argues that Plaintiff has not asserted any facts to suggest that it violated the UDTPA. [Doc. 6-1 at 18]. Again, Plaintiff offered no response to this argument. [*See* Docs. 7, 17, *passim*]. The UDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of his business, violation, or occupation, he:

1.    Passes off goods or services as those of another;

2.    Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

3.    Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

4.    Uses deceptive representations or designations of geographic origin in connection with goods or services;

5.    Represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

58

they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

6.   Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

7.   Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

8.   Disparages the goods, services, or business of another by false or misleading representation of fact;

9.   Advertises goods or services with intent not to sell them as advertised;

10.  Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

11.  Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

12.  Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

O.C.G.A. § 10-1-372(a). Plaintiff's amended complaint fails to allege which provision

of the UDTPA that Defendants have allegedly violated or even facts to suggest that

Defendants have been deceptive regarding goods and/or services.  Accordingly, the

undersigned **RECOMMENDS** that the motions to dismiss Plaintiff's UDTPA claim

59

be **GRANTED**.

## C. Breach of Contract

Plaintiff's breach of contract claim is based solely on the allegation that he was not paid for the 16 hours he worked from June 6-7, 2015. [Doc. 5 ¶¶ 139-43]. DGS argues that Plaintiff's breach of contract claim fails because the facts make it clear that DGS did not breach a contract. [Doc. 6-1 at 18]. DGS argues that Plaintiff admittedly was required to sign and submit time sheets for the hours he worked, that he admittedly failed to do so, and that DGS made clear that once he submitted his time, he would be paid. [*Id*. at 18-19]. Plaintiff did not specifically respond to DGS' breach of contract argument, however, Plaintiff's response continued to defend the allegations set forth in the amended complaint, mainly that he has yet to be paid for when he worked on June 6-7, 2015 and he in fact signed the time sheets. [*See* Doc. 17 at 9].

Review of Plaintiff's amended complaint shows that he does not dispute that he did not sign the sign-in sheet for May 16-17, 2015, [*see* Doc. 5 ¶¶ 101-14], however, it does allege that Plaintiff signed the sign-in sheets for June 6-7, 2015, [*id*. ¶¶ 118, 123], and that, even after Plaintiff raised the matter, he has yet to be paid, [*id*. ¶¶ 115-19]. Accordingly, DGS' argument fails and the undersigned **RECOMMENDS** that the

AO 72A
(Rev.8/8
2)

motions to dismiss Plaintiff's breach of contract claim be **DENIED**.[12]

In summary, the Court recommends that Plaintiff be allowed to amend his complaint a second time to assert an FLSA claim against DGS only, and that his state-law breach of contract claim against DGS be allowed to go forward. If the Court ordered Plaintiff to amend his complaint now, before the District Judge ruled upon any objections to this Order and R&R, then the parties will have needlessly engaged in extra work if the district Judge disagrees with one or more of the conclusions contained in this Order and R&R. So, the Court furthers **ORDERS** as follows:

1.   If the District Judge adopts this R&R and overrules any objections to the Court's conclusion as to Plaintiff raising an FLSA claim in a further amended complaint, then **within 14 days** of the District Judge's Order, Plaintiff shall file a second amended complaint containing only an FLSA claim and a breach of contract claim against DGS (if the District Judge allows any of those claims to proceed).

2.   The Second Amended Complaint **SHALL NOT** reassert any claims the District

---

[12]     The Court observes that Plaintiff's breach of contract claim might be preempted by his FLSA claim. *See, e.g., Bule v. Garda CL Se., Inc.*, No. 14-21898-CIV, 2014 WL 3501546, at *2 (S.D. Fla. July 14, 2014) (discussing cases). As DGS did not advance this argument (not surprisingly because it contends that Plaintiff should not be allowed to assert an FLSA claim), the Court need not address it.

AO 72A
(Rev.8/8
2)

Judge has dismissed with prejudice.

3.  The Second Amended Complaint must comply with the formatting rules set forth in the local rules of this Court and may not exceed **fifteen (15) pages** in length.

4.  The Second Amended Complaint may provide a brief introductory overview of the case.  However, it **SHALL** set forth each cause of action ("Count") separately and clearly indicate the nature of each cause of action.

5.  Under each Count, the Second Amended Complaint **SHALL** provide, in separately numbered and sequential paragraphs, the relevant facts, including dates, that Plaintiff believes entitle him to relief.

6.  Each Count of the amended complaint **SHALL NOT** incorporate by reference all foregoing paragraphs.

7.  Plaintiff **SHALL** attach to his Second Amended Complaint any documents forming the basis for his remaining claims, including any internal complaints, and any other documents that he believes are relevant to these claims.  The documents shall be organized and clearly labeled as exhibits, and each exhibit referenced in the Second Amended Complaint shall be identified therein by its exhibit number.

8.  Plaintiff is **CAUTIONED** that the Court will view the Second Amended

Complaint as superseding and entirely replacing the original and first amended complaints, and therefore the Second Amended Complaint must contain clear and concise allegations fully stating the basis for each claim the District Judge allows to be brought.

9.  Plaintiff is **ADVISED** that his Second Amended Complaint must provide "a *short and plain* statement" of each claim, Fed. R. Civ. P. 8(a)(2) (emphasis added), and provide facts sufficient to show that each claim is plausible, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

10. Plaintiff is **ADVISED** that if he does not comply with these directions, the matter will be subject to dismissal.

### VII.  *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** that Delta and Cooper's motion to dismiss, [Doc. 23], be **GRANTED** and that the claims against Delta and Cooper be **DISMISSED WITH PREJUDICE**.

The undersigned further **RECOMMENDS** Defendant DGS and Aborisade's motions to dismiss, [Docs. 6, 11], be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** that the motions be **DENIED** as to Plaintiff's breach of contract claim against DGS only and **GRANTED** as to all

63

other claims, and that Aborisade be **DISMISSED WITH PREJUDICE**.

Finally, the undersigned **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to amend, [Doc. 32]. Specifically, Plaintiff's motion is **GRANTED** to assert a claim against DGS under the FLSA for failure to pay the 16 hours for June 6-7, 2015 **only**, and Plaintiff shall file his second amended complaint within 14 days of the District Judge's Order on this R&R consistent with the directions set out in this Order and R&R.

**IT IS SO RECOMMENDED and ORDERED**, this the  1st  day of August, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)